
FILED
2010 Jan-06 PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JIM WALTER RESOURCES, INC., ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | 7:08-CV-02033-LSC |
| ] | |
| UNITED MINE WORKERS OF ] | |
| AMERICA, INTERNATIONAL ] | |
| UNION; UNITED MINE WORKERS OF ] | |
| AMERICA, LOCAL 2397; UNITED ] | |
| MINE WORKERS OF AMERICA, LOCAL ] | |
| 2245; UNITED MINE WORKERS OF ] | |
| AMERICA, LOCAL 2368; UNITED ] | |
| MINE WORKERS OF AMERICA, ] | |
| LOCAL 2427, ] | |
| ] | |
| Defendants. ] | |

Memorandum of Opinion

I.  Introduction.

The Court has for consideration a motion for summary judgment, which was filed on October 5, 2009, by Defendants United Mine Workers of America, International Union and United Mine Workers of America, Locals 2397, 2245, 2368, and 2427 ("Defendants"). (Doc. 29.) Plaintiff Jim Walter Resources, Inc. ("JWR") has sued Defendants for breaching the labor

agreement between the parties by allegedly engaging in an illegal work stoppage under the guise of a "Memorial Day," costing the company millions of dollars in lost revenue. The Defendants have moved for summary judgment on the grounds that the labor agreement requires arbitration for this dispute, or in the alternative, the Memorial Day in question was designated for a legitimate reason as required by the collective bargaining agreement. (Doc. 29.) The issues raised in Defendants' motion for summary judgment have been briefed by both parties and are now ripe for decision. Upon full consideration of the legal arguments and evidence presented, the Court concludes that this matter is ripe for arbitration under the labor agreement between the parties.

II.     Facts.[1]

JWR owns and operates an underground coal mine and supporting facilities in Tuscaloosa County, Alabama. The Defendants represent the

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

employees of JWR as to the terms and conditions of their employment. Miners currently work for JWR under a wage agreement that became effective on January 1, 2007. This agreement includes a provision that reads, "The International Union, United Mine Workers of America, may designate memorial periods not exceeding a total of ten (10) days during the term of this Agreement at any mine or operation provided it shall give reasonable notice to the Employer." In addition to the wage agreement, representatives for District 20 of the United Mine Workers of America negotiated a Memorandum of Understanding ("MOU"). One of the MOU's provisions dealt with memorial days and stated, among other things, "The memorial period will be designated for legitimate reasons." This language was unique and has never appeared in any wage agreement since at least 1971.

From January 12, 2007, to October 2008, no memorial days were called at any JWR facilities. On September 8, 2008, however, the U.S. Department of Labor, Mine Safety and Health Administration ("government") proposed a rule regarding alcohol and drug testing for mine workers. The government provided a comment period through October 8, 2008. In the month that

followed the proposal of the rule, the Defendants objected to the new rule, sought its withdrawal, and sought an extension of the comment period.  The comment period was eventually extended and accommodations were made for miners to personally participate in hearings on the proposed rule.

On October 8, 2008, the Presidents of Locals 2397 and 2245 submitted a joint request for a memorial day on October 14, 2008, the date of a hearing on the proposed rule, "in order to flood MSHA's office with miners to protest the blatant disrespect by MHSA."  On October 9, 2008, the United Mine Workers of America's president, Cecil Roberts, agreed to designate October 14, 2008 a memorial day for those working at JWR's No. 7 Mine under the jurisdiction of Local 2397.

On October 10, 2008, representatives of JWR attempted to contact union officials to inquire as to the reason for the memorial day and seek alternatives to suspending work at the mine.  JWR representatives Rich Donnelly, VP of Engineering, and Mike Hall, Director of Human Resources, spoke with District 20 representative Larry Spencer regarding the memorial day.  During this conversation, Spencer mentioned issues of local concern to the No. 7 Mine, including work scheduling and problems with the No. 7

Industrial Relations Supervisor.  Ray Lee, the president of Local 2397, discussed the memorial day with the No. 7 Mine Manager Trent Thrasher and mentioned the government hearing on the proposed rule.  District 20 Vice President Daryl Dewberry spoke with Hall on October 10, 2008, telling him that the union felt that it "was being mishandled by MSHA and they wanted to make a showing, wanted to go make a statement to MSHA and needed a lot of people."

Despite these conversations, in-house counsel for JWR advised President Roberts that JWR believed that the memorial period was not designated for legitimate reasons as dictated by the wage agreement, but rather was directed at purely local issues at the No. 7 Mine.  Local 2397 was the only local union that took a memorial day on October 14, 2008.  No memorial day was designated for any other local union in the district or nation. Another memorial day was later requested for October 28, 2008, the date of a second hearing on the proposed rule, "in order to allow miners the opportunity to testify at this important hearing."  Locals 2245, 2397, 2427, and 2368 took a memorial day on October 28, 2008.

III.   Analysis.

The Supreme Court, in three cases known collectively as the *Steelworkers Trilogy*, set out the principles of interpretation that this Court is to apply when analyzing collective bargaining agreements. *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). From these cases have emerged several principles. First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Id*. Following "inexorably" from this principle is the second — "the question of arbitrability — whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination."[2] *Id*. at 649. Furthermore, when analyzing an arbitration claim, "a court is not to rule on the potential merits of the underlying claims." *Id*. Such analysis is left to the arbitrator. Finally, when the contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the

---

[2] The parties may, through contract, designate that the arbitrator will determine the question of his own jurisdiction. *Id*. at 649.

arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." *Id.* at 650 (citations omitted).  Importantly, the Supreme Court has further broadened this statement, saying, "Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . . .'  In such cases, 'in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id.* at 650 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)).  Despite this broad presumption in favor of arbitrability, "arbitration is not available where (1) grievance procedures of the agreement neither explicitly nor implicitly provide for such arbitration and (2) the contractual grievance machinery is

wholly employee oriented." *Friedrich v. Local No. 780, IUE-AFL-CIO-CLC*, 515 F.2d 225, 227 (5th Cir. 1975).[3]

Defendant argues that this matter should be in arbitration and that JWR was required by the 2007 contract to submit this matter to arbitration rather than bringing legal action. In the 2007 Wage Agreement, the parties made it clear in no uncertain terms their preference for non-judicial settlement of disagreements that might arise under their agreement. In Article XXVII, the 2007 Wage Agreement states,

> The United Mine Workers of America and the Employers agree and affirm that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the "Settlement of Disputes" Article of this Agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts.
>
> The Employer, however, expressly authorizes the Union to seek judicial relief, without exhausting the grievance machinery, in cases involving successorship.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981.

(Doc. 30, Ex. C at 7-8.)

This language evinces a particularly strong desire to avoid "recourse to the courts," and at the minimum invokes the strong presumption in favor of arbitration commanded by *AT&T Technologies, Inc.* The grievance procedure itself further confirms this, stating, "Should differences arise between the Mine Workers and an Employer as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest practicable time." (Doc. 36, Ex. A at 3.)

Given this language, at first blush it appears that Defendants may compel JWR to arbitrate this matter. JWR argues, however, that the arbitration procedure is wholly employee oriented and that "only employees, not JWR, can initiate the comprehensive dispute resolution procedure under the 2007 Wage Agreement." (Doc. 35 at 17.) JWR points out that the first step in the dispute resolution procedure states,

> Disputes arising under this Agreement shall be resolved as follows:

> (1) *The Employee* will make his complaint to his immediate foreman who shall have authority to settle the matter. The foreman will notify the Employee of his decision within 24 hours following the day when the complaint is made. Settlements or withdrawals at this step shall not constitute a precedent in handling of other grievances.

(Doc. 36, Ex. A at 3) (emphasis added).

JWR also points to several other sections where the grievance procedure specifically mentions the singular "employee." *See* Doc. 36, Ex. A at 4-5. The Court is left then with an apparent contradiction. On the one hand, the contract between the parties requires that "all disputes and claims" are subject to arbitration. On the other, the grievance procedure itself seems geared towards handling the grievances of individual employees. While the contract is murky, the precedent is clear. The Court must compel arbitration unless, when these clauses of the contract are taken together, the Court can say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650. It is clear both from the facts of this dispute and rulings in similar cases that this matter is subject to arbitration.

In *ITT World Communications v. Communications Workers of America*, the Second Circuit dealt with a similar instance of a company suing for

violation of a contractual "no strike" clause and subsequent attempts by the union to invoke arbitration at the summary judgment stage of litigation. 422 F.2d 77 (2d Cir. 1970). ITT, like JWR here, argued that the arbitration clause covered only employee disputes. The court noted, "The combination of a broad arbitration clause and vague or no exclusionary language has usually, since the [*Steelworkers Trilogy*], led to arbitration . . . In short, ITT's arguments at most raise a doubt whether the arbitration clause covers the dispute, but we are instructed to resolve that doubt in favor of coverage." *Id.* at 82 (citations omitted). The same logic applies here. The grievance procedure itself does appear to be employee oriented, but the parties, in two different clauses of the contract, have expressed their unqualified desire that disputes be resolved "without recourse to the courts."

Furthermore, as in *ITT*, "the parties elsewhere in the contract showed that they knew how to clearly exclude a subject from arbitration when they so desired." *Id.* at 81. The Wage Agreement clearly states, "The Employer, however, expressly authorizes the Union to seek judicial relief, without exhausting the grievance machinery, in cases involving successorship." (Doc.

30, Ex. C at 7-8.)  The parties were not ignorant of the need to exempt certain actions from arbitration, and had they intended "all disputes and claims" to mean "all disputes and claims *of employees*," they could have easily said so.

Finally, and perhaps most importantly, it is apparent to the Court that JWR does not believe, as it stated in its opposition to summary judgment, that the right to arbitration is "reserved in employees only."  (Doc. 35 at 18.)  If this Court were to interpret the arbitration procedure based on the language "The Employee will make his complaint to his immediate foreman," the union, as an entity, would be as barred from invoking arbitration as JWR. Obviously, neither the Defendants nor JWR have an immediate foreman, and if making a complaint to that immediate foreman is a necessary requirement to arbitration, then the force of the parties dispute resolution procedure is greatly diminished.  Under this interpretation, it would seem that only the complaints of individual employees would be subject to arbitration.  JWR, in its own complaint, disputes this assertion.  In that complaint, JWR, after asserting that the Defendant unions are subject to the collective bargaining agreement, requests that this Court enter a declaratory judgment that any

dispute between the union and JWR is "subject to the arbitration procedure."[4]  (Doc. 1.)

The Court believes the more plausible explanation of the clause in question is that both the Defendants and JWR wanted to insure that, before full-scale arbitration was engaged to solve the claims of individual employees, those claims would require a less formal, less expensive review.  Such a common sense policy would both prevent excess cost to the company and maintain the Defendants' control over the grievances of its members.  As JWR stated in its complaint, the grievance procedure "culminates in final and binding arbitration."  (Doc. 1 at 4.)  It does not begin there.

In any event, the one thing that is certain to this Court is that the answer to whether or not the parties intended that this action should proceed to arbitration is uncertain.  Since it cannot be said "with positive assurance" that the dispute resolution mechanism "is not susceptible of an

---

[4] The parties express exclusion of matters of successorship—when an employer is required to negotiate with the union that represents employees of a predecessor employer—further underscores the all encompassing nature of the arbitration clause.  It would be bizarre indeed if a clause that applies merely to the grievances of individual employees nevertheless required an express exclusion of a paradigmatic union-wide issue in order to prevent arbitration of that issue.

interpretation that covers" both employer and employee disputes, the Court has no choice but to compel arbitration.

IV. Conclusion.

Having considered the arguments presented, it is apparent to this Court that arbitration is contractually required in this matter. Therefore, Defendants' motion for summary judgment is granted to the extent it seeks arbitration. The Court takes no position on the underlying merits. A separate order will be entered.

Done this 6th day of January 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671